IN THE
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **PAYDAY TODAY, INC.,** | ) |
| By Robert Matijevich, President | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **INDIANA DEPARTMENT OF** | ) |
| **FINANCIAL INSTITUTIONS, CHARLES** | ) |
| **W. PHILLIPS**, Director, individually and in | ) |
| his representative capacity, **J. PHILIP** | ) |
| **GODDARD**, individually and in his | )   **CAUSE NO.2:05-CV-00122-PPS-APR** |
| representative capacity, **JOHN J.** | ) |
| **SCHROEDER**, individually and in his | ) |
| representative capacity, and **MARK B.** | ) |
| **TARPEY**, individually and in his | ) |
| representative capacity, and **STEVE** | ) |
| **CARTER**, Indiana Attorney General | ) |

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS AND FOR FINAL JUDGMENT FOR DEFENDANTS**

### *Introduction*

Plaintiff, Payday Today, Incorporated, Robert Matijevich, its President**,** ("Payday Today"), is a licensed payday lender in the State of Indiana.  Defendants are employees of the Indiana Department of Financial Institutions ("DFI"), the Indiana Department of Financial Institutions and the Attorney General of Indiana.  Payday Today has filed a Complaint for Damages, Motion for Preliminary Injunction and Request for Class Certification ("Complaint") in the United States District Court for the Northern District of Indiana against the Defendants, in their individual and official capacities. Plaintiff is suing the DFI Defendants and the Attorney

General because the DFI issued a statement that payday lenders may be subject to licensure revocation proceedings if they willfully violate the Indiana Small Loan Act ("SLA") by seeking treble damages and/or attorney fees for collection of small loans.  Plaintiff alleges that licensure revocations based upon the payday lenders' violations of the SLA violate the Constitution of the United States, 42 U.S.C. § 1983, specifically the Equal Protection Clause, the Due Process Clause and the Contract Clause. Plaintiff is seeking injunctive relief, attorney fees, damages, and costs.

For a variety of reasons, the lawsuit cannot proceed against the Defendants.  The Plaintiff has had no federal rights violated, and alleged violations of state laws or policies are not actionable under 42 U.S.C. § 1983.  More precisely, Plaintiff cannot prevail on its Section 1983 action because of the following: **(A)** Plaintiff has failed to establish jurisdiction in this Court; **(B)** Plaintiff has failed to establish a federal violation to support a Section 1983 claim; **(C)** The State agencies and state employees sued in their official capacities are not "persons" for purposes of Section 1983;  **(D)** The Eleventh Amendment to the United States Constitution prevents the Plaintiff from bringing this action in federal court; **(E)** Defendants sued in their individual capacities are entitled to qualified immunity; **(F)** The public interest weighs in favor of the constitutionality of the SLA.

### *Summary of Allegations*

Plaintiff claims that the Defendants possible revocation of the license of payday lenders who willfully violate the Indiana Small Loan Act ("SLA"), Ind. Code § 24-4.5-7-1 *et seq.,* violates the United States Constitution and the Indiana Constitution.  Plaintiff falsely states on page 12 of its Complaint that this threatened action, licensure revocation proceedings, is beyond the scope of the DFI's authority and cites to the repealed Ind. Code § 24-4.5-7-408.  Specifically,

the Plaintiff makes the following claims as the basis for this lawsuit, all of which challenge the constitutionality of the SLA, and do not challenge the DFI's authority to enforce the SLA:

**Counts I and IX**:  The statutory prohibition for payday lenders to contract for and collect attorney fees, pursuant to Ind. Code § 24-4.5-7-410(d), while no other commercial lenders are placed under such a restriction, violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and the Privileges and Immunities Clause of Article 1, § 23 of the Indiana Constitution.

**Counts II, X, and XV**:  The statutory prohibition for payday lenders to threaten consumers with criminal action under the Indiana Check Deception and Check Fraud Statute, without showing fraud, violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, the Privileges and Immunities Clause of Article 1, § 23 of the Indiana Constitution, and the Due Process Clause under Article 1, §1 of the Indiana Constitution.

**Counts III, VI, XI, and XIV**:  The statutory prohibition for payday lenders to extend loans in an amount greater than $500, violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, the Privileges and Immunities Clause of Article 1, § 23 of the Indiana Constitution, and the Contract Clause of Article 1, § 24 of the Indiana Constitution.

**Counts IV and XII:**  The statutory prohibition for payday lenders to collect an amount of interest that is stated in its contracts with consumers that is higher than that allowed by the SLA violates the Contract Clause of Article I, § 10 of the United States Constitution and the Contract Clause of Article 1, § 24 of the Indiana Constitution.

**Counts V and XIII:** The statutory prohibition for licensed payday lenders to contract with consumers for the collection of attorney fees violates the Contract Clause of Article I, § 10

of the United States Constitution and the Contract Clause of Article 1, § 24 of the Indiana Constitution.

Count XVI:  The statutory prohibition for payday lenders to allege fraud in civil courts or use the bad check laws to seek attorney fees and treble damages and DFI's threat to commence license revocation proceedings for violations of this statute violate the Due Process Clause under Article 1, §1 of the Indiana Constitution.

Count XVII:  The DFI has violated its duty to the payday lending industry by mandating conformance to the SLA, and Plaintiff is seeking an injunction to prevent the DFI from taking any licensure action against any payday lender until such time as the case can be heard on the merits.

Count XVIII:  The DFI, by requiring the payday lenders to adopt a memorandum of understanding that is in clear contradiction to the law, conspired to harm payday lenders through threatened license revocation proceedings.

The above-listed allegations of the Complaint have been filed against the DFI's employees, both individually and in their official capacities: Director Charles W. Phillips, General Counsel and Deputy Director, J. Philip Goddard, Deputy Director John J. Schroeder, and Supervisor Mark B. Tarpey.   The Complaint contains no allegations against Steve Carter, Attorney General of Indiana.  However, the Attorney General is listed as a Defendant in the caption.  These allegations are presumed but not conceded to be true for the purposes of Defendants' motion to dismiss.

## ***Legal Background***

The legislature clearly intended the DFI to have full authority to liberally construe and apply the Indiana Uniform Consumer Credit Code ("IUCCC") to promote its underlying

purposes and policies by stating specifically as follows:

> (2)  The underlying purposes and polices of this article are:
> (a) to simplify, clarify, and modernize the law governing
> retail installment sales, consumer credit, small loans, and usury;
> (b) to provide rate ceilings to assure an adequate supply of
> credit to consumers;
> (c) to further consumer understanding of the terms of
> credit transactions and to foster competition among suppliers
> of consumer credit so that consumers may obtain credit at
> reasonable cost;
> (d) to protect consumer buyers, lessees, and borrowers
> against unfair practices by some suppliers of consumer credit,
> having due regard for the interests of legitimate and scrupulous
> creditors;
> (e) to permit and encourage the development of fair and
> economically sound consumer credit practices;
> (f) to conform the regulation of consumer credit transactions
> to the policies of the Federal Consumer Credit Protection Act; and
> (g) to make uniform the law including administrative rules
> among the various jurisdictions.

Ind. Code § 24-4.5-1-102.

To achieve these policies, Indiana Code § 24-4.5-1-102 requires that the statute be

liberally construed and provides as follows:

> (1)  This article shall be liberally construed and applied to promote its
> underlying purposes and policies.
> (2)  The underlying purposes and policies of this article are:
>
> *        *        *        *        *
>
> (d) to protect consumer buyers, lessees, and borrowers
> against unfair practices by some suppliers of consumer
> credit, having due regard for the interests of legitimate
> and scrupulous creditors.

Some of the powers of the DFI are defined at Ind. Code § 24-4.5-6-104:
Sec. 104. (1) In addition to other powers granted by this article, the department within the
limitations provided by law may:
(a) receive and act on complaints, take action designed to obtain voluntary
compliance with this article, or commence proceedings on the department's own
initiative;
(b) counsel persons and groups on their rights and duties under this article;
(c) establish programs for the education of consumers with respect to credit practices

and problems;

(d) make studies appropriate to effectuate the purposes and policies of this article and make the results available to the public;

(e) adopt, amend, and repeal substantive rules when specifically authorized by this article, and adopt, amend, and repeal procedural rules to carry out the provisions of this article;

(f) maintain more than one (1) office within Indiana; and

(g) appoint any necessary attorneys, hearing examiners, clerks, and other employees and agents and fix their compensation, and authorize attorneys appointed under this section to appear for and represent the department in court.

(2) No liability is imposed under this article for an act done or omitted in conformity with a rule, written notice, written opinion, written interpretation, or written directive of the department notwithstanding that after the act or omission the rule, written notice, written opinion, written interpretation, or written directive may be amended or repealed, or be determined by judicial or other authority to be invalid for any reason.

*(Formerly: Acts 1971, P.L.366, SEC.7.) As amended by P.L.247-1983, SEC.22; P.L.14-1992, SEC.46; P.L.45-1995, SEC.15; P.L.172-1997, SEC.9.*

The SLA came about as a result of *Livingston v. Fast Cash USA, Inc*., 753 N.E.2d 572 (Ind. 2001), where the issue was whether payday loan companies could collect finance charges from customers in excess of the 36% permitted by Ind. Code § 24-4.5-3-508(2).  The loan companies contended that, even though the finance charge of $33 on a $200 loan amounted to a 402% Annual Percentage Rate ("APR"), that they were allowed to collect the $33 charge on any amount of loan. *Id*., 753 N.E.2d at 575. The Supreme Court concluded differently and held that loans are limited by the maximum 36% under the statute.  In so doing, one member of the Court observed, "It has been awhile since we last encountered a statute in such serious need of revision." *Id.,* 753 N.E.2d at 581 (Shepard, C.J., dissenting).

On March 14, 2002, the SLA took effect on passage. Ind. Code § 24-4.5-7.  Subsection 201 limited interest charges on principal to 15% of the first $100 loaned and 10% of the amount over $100.  The maximum total charge could not exceed $35.  Delinquency charges were limited to $5 on any installment.

In 2004, amendments were made by the General Assembly to the SLA.  The limits on the principal amount for a small loan were increased from $401 to $500.  The finance charges were raised to 15% of the first $250, for the amount of the loan greater than $250 but less than $400 the allowable finance charge was raised to 13%, and for the amount of the loan greater than $400 or equal to $500 the allowable finance charge was raised to 10%.  Ind. Code § 24-4.5-7-201.  The permitted delinquency charge was eliminated at the same time the rates were increased.

The amounts listed above result in an allowable annualized interest rate for licensed small loan lenders that range from 349.4% interest to 391.1%.  This amount far exceeds the amount of interest that financial institutions or other creditors may charge for loans which ranges from 21% to 36% annualized interest rate under Ind. Code § 24-4.5-3-508. In essence, payday loan lenders have been given a privilege that financial institutions and other creditors have not received – higher finance charges as provided for in Ind. Code § 24-4.5-7-411.

In addition to the above charge, the lender of a small loan may contract for a statutorily allowed fee that is not to exceed $20, for each:

    (a)  return by a bank or other depository institution of a:
           (i)        dishonored check;
           (ii)       negotiable order of withdrawal; or
           (iii)     share draft issued by the borrower; or
    (b) time an authorization to debit the borrower's account is dishonored.

This additional charge may be assessed one time regardless of how many times a check or an authorization to debit the borrower's account may be submitted by the lender and dishonored.  Ind. Code § 24-4.5-7-202.  Loans in excess of $500 are Consumer Loans regulated under the IUCCC with a maximum interest charge of 21% to 36% annualized interest rate depending on the amount financed and the term of the loan per Ind. Code § 24-4.5-3-508.

## *Standard of Review*

A motion to dismiss a complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim should be granted if it appears that the plaintiff cannot prove any facts that would support his claim for relief.  *Conley v. Gibson*, 355 U.S. 41, 45 (1957).  A complaint must include factual allegations respecting all material elements of all claims asserted, *Papapetropoulous v. Milwaukee Transport Services*, 795 F.2d 591, 594 (7th Cir. 1986).   A plaintiff cannot state a claim "by attaching a bare conclusion to the facts he narrates." *Kyle v. Morton High School*, 144 F.3d 448, 455 (7th Cir. 1998) (citing *Sutcliff, Inc. v. Donovan Co., Inc.*, 727 F.2d 648, 654 (7th Cir. 1984)).  The Court is not required to "ignore any facts set forth in the complaint that undermine plaintiff's claim." *Martin v. Davies*, 917 F.2d 336, 341 (7th Cir. 1990).  A plaintiff may "plead himself out of court" by alleging facts that defeat his claim.  *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997); *Jackson v. Marion County*, 66 F.3d 151, 153-54 (7th Cir. 1995).

While it is true that in evaluating the motion, a Court should view the facts in the complaint in the light most favorable to the nonmoving party, *GATX Leasing Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995) (citations omitted), a plaintiff is not permitted to substitute "conclusory statements  . . .  for miminally-sufficient factual allegations." *Seglin v. Esau*, 769 F.2d 1274, 1283 (7th Cir. 1983).

## *Argument*

### A.  Plaintiff has failed to establish jurisdiction in this Court.

Plaintiff has failed to allege a violation of any federal law.  The Plaintiff claims that the SLA, or at least portions of Indiana Code § 24-4.5-7, violates the Indiana and United States Constitutions, and thus the DFI employees will violate the Plaintiff's constitutional rights if they

8

enforce the state statute.   At first blush, it appears that the Plaintiff's theory for relief is that the

DFI employees do not have the authority to pursue licensure revocation proceedings against

licensed payday lenders who violate the SLA.  However, Plaintiff's allegations in all of its

counts are based upon the theory that portions of the SLA are unconstitutional.

Moreover, the Plaintiff does not allege any basis for federal jurisdiction over the DFI, its

employees or the Attorney General.  First, Plaintiff is challenging the constitutionality of a state

statute, the SLA.  Plaintiff has merely claimed that sections of the SLA are unconstitutional.

Second, there could be no diversity jurisdiction, even assuming otherwise complete diversity.

*Postal Telegraph Cable Co. v. Alabama*, 155 U.S. 482 (1894) (state is not a citizen of any state

for purposes of diversity jurisdiction).  In this case, there is absolutely no diversity jurisdiction,

the SLA only applies to Indiana licensed payday lenders. Third, where there is no federal

question, there can be no supplemental jurisdiction under 28 U.S.C. § 1367 because that statute

does not override States' Eleventh Amendment immunity.  *Lembach v. State of Indiana*,

N.D.Ind.1997, 987 F.Supp. 1095 (N.D. Ind. 1997); *Doran By and Through Doran v. Condon*,

983 F.Supp. 886 (D. Neb. 1997).  Therefore, the Plaintiff's state claims are also barred.

**B.   Plaintiff has failed to establish a federal violation to support a Section 1983 claim.**

Plaintiff alleges that it is bringing an action for "violation of its civil rights" pursuant to

42 U.S.C. § 1983 seeking punitive damages against the individual Defendants in their individual

capacities, for costs and attorney's fees, for prejudgment interest, and for a permanent injunction

preventing Defendants from continuing these unconstitutional practices.  (Complaint)

"Section 1983 imposes liability on anyone who, under color of state law, deprives a

person of any rights, privileges, or immunities secured by the Constitution and laws." *Blessing*

*v. Freestone,* 520 U.S. 329, 340 (1997) quoting *Maine v. Thiboutot,* 448 U.S. 1 (1980).  Thus, in

order to state a cause of action under § 1983, a plaintiff cannot merely assert that a federal statute was violated; rather, the plaintiff must assert that a federal right he possessed was violated.  In *Blessing,* the United States Supreme Court stated that three factors must be examined in order to determine whether a statutory provision creates a federal right:

> 1) "Congress must have intended that the provision in question benefit the plaintiff;"
>
> 2) "The plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence;" and
>
> 3) "the statute must unambiguously impose a binding obligation on the States.  In other words, the provision giving rise to the asserted right must be couched in mandatory rather than precatory terms."

*Id.* at 341, 342.  *Westside Mothers v. Haveman,* 289 F.3d 852; 2002 U.S. App. Lexis 9159 (6th Cir.)

> The *Blessing* Court further stated:
>
> > Even if a plaintiff demonstrates that a federal statute creates an individual right, there is only a rebuttable presumption that the right is enforceable under § 1983.  Because our inquiry focuses on congressional intent, dismissal is proper if Congress "specifically foreclosed a remedy under § 1983."  *Smith v. Robinson,* 468 U.S. 992, 1005 n.9, 82 L. Ed. 2d 746, 104 S. Ct. 3457 (1984).  Congress may do so expressly, by forbidding recourse to § 1983 in the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983."  *Lividas v. Bradshaw,* 512 U.s. 107, 133, 129 L. Ed. 93, 114 S.Ct. 2068 (1994).

*Id.* at 341.

Applying the aforementioned factors to the instant case, it is clear that Plaintiff cannot state a cause of action under Section 1983 by merely asserting that the Defendants violated its constitutional rights under the Equal Protection Clause, the Due Process Clause or the Contract Clause of the United States Constitution.  It should be noted that the IUCCC is not a lender's

code.  It is a consumer code, as illustrated in Ind. Code § 24-4.5-1-102.  Specifically, the SLA sets forth requirements imposed on licensed payday lenders for the protection of consumers. Furthermore, the IUCCC is a state law, not federal.

Second, Plaintiff does not have a constitutional right to collect attorney fees from consumers, collect treble damages from consumers, threaten consumers with criminal actions, or to contract with consumers for any of these terms in violation of the SLA.  While some financial institutions, such as banks, have some of these statutory rights under the IUCCC, payday lenders do not have a constitutional right to them.

The Plaintiff's Complaint does not clear the first hurdle set out in *Blessing* because Plaintiff has failed to establish a right under a federal law that has been violated by the Defendants.

### 1. Plaintiff fails to state a claim under the Equal Protection Clause.

The Plaintiff asserts that its constitutional right to equal protection under the IUCCC was violated by the Defendants.  The Defendants are unable to detect any factual allegations that support this blanket assertion.  The guarantee of equal protection of the law is not, with one exception that is inapplicable here,[1] a source of substantive rights, "but rather a right to be free from invidious discrimination in statutory classifications and other governmental activity." *Shango v. Jurich*, 681 F.2d 1091, 1103 (7th Cir. 1982).  In order to state a claim under the Equal Protection Clause, a plaintiff must complain of being singled out for oppression because of membership in a class, but "the state's act of singling out an individual for differential treatment" does not "itself create the class." *Albright v. Oliver*, 975 F.2d 343, 348 (7th Cir. 1992), *aff'd*., 510

---

[1] *See  Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), and its progeny regarding voting rights.

U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), *reh'g den.,* 510 U.S. 1215, 114 S.Ct. 1340, 127

L.Ed.2d 688 (1994).

"[T]he Equal Protection Clause has long been limited to instances of purposeful or

invidious discrimination rather than erroneous or even arbitrary administration of state powers.

The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious

classification of persons aggrieved by the state's action." *Briscoe v. Kusper*, 435 F.2d 1046,

1052 (7th Cir. 1970).  The Plaintiff has only alleged some deprivations of rights that the financial

institutions, such as banks, possess.  For example, Plaintiff alleges that it has the right to contract

for and seek attorney's fees for defaulted small loans in contravention of the SLA.  However, the

Plaintiff fails to tie these deprivations into a claim that were caused by bias based on an invidious

classification.  In fact, the Plaintiff has conveniently left out the additional rights that only the

licensed payday lenders are granted, in particular, the right to charge interest up to the amount of

391% when the financial institutions and other creditors may only charge up to 36%.   The

Indiana General Assembly intended this significantly inflated interest rate to compensate payday

lenders for their bad debt experience.  If the payday lenders have received an invidious

classification, they would not have received the benefits of a much higher interest rate.  As such,

they have failed to state a claim under the Equal Protection Clause.

### 2.  Plaintiff has failed to state a claim under the Due Process Clause.

Plaintiff generally alleges a violation of due process. Plaintiff's pleadings fail to articulate

whether they claim a violation of *procedural* or *substantive* due process. To prevail under 42

U.S.C. § 1983, a plaintiff must establish that (1) he had a constitutionally protected right, (2) he

was deprived of that right in violation of the Constitution, (3) the defendant(s) intentionally

caused that deprivation and (4) the defendant(s) acted under color of state law.  *McNabola v.*

*Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir. 1993); *Patrick v. Jasper County*, 901 F.2d 561, 565 (7th Cir. 1990).

A claim is stated under 42 U.S.C. § 1983 only by the deprivation of a right guaranteed by federal law. *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 811-12, 127 L.Ed.2d 114 (1994) (first inquiry in action under Section 1983 is to identify federal right allegedly infringed); *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981).

To the extent the Plaintiff is claiming a violation of its rights to substantive due process, such claim fails. The substantive right found in the Due Process Clause "bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to employ them.'" *Colon v. Schneider*, 899 F.2d 660, 666 (7th Cir. 1990) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). As Plaintiff has failed to allege any substantive due process right that was implicated in a licensure revocation decision, Defendants are entitled to judgment as a matter of law on any such substantive due process claims. The Plaintiff has failed to state a substantive due process right that prevents the Defendants from taking a licensure action against it for violations of the SLA. *See Golden v. McCaughtry,* 937 F.Supp. 818, 824 (E.D. Wis. 1996); *see also Wozniak v. Conry*, 236 F.3d 888 (7th Cir. 2001) (*citing Washington v. Glucksberg*, 521 U.S. 702, 720-22 (1997).

The protections of the Due Process Clause of the Fourteenth Amendment, whether procedural or substantive, are not triggered by lack of due care of an official causing unintended injury to life, liberty or property. *Davidson v. Cannon*, 106 S.Ct. 668, 670-71 (1986). Plaintiff fails to allege any intentional deprivation of a constitutional right. The Defendants have not arbitrarily threatened licensure actions for violations of the SLA. The Defendants have given full notice of their intent to enforce the SLA to all licensed payday lenders prior to the

commencement of any action.  In fact, to date, no action against a payday lender's license has been commenced by the Defendants.  Therefore, Plaintiff fails to state a claim under Section 1983 for violations of the Due Process Clause.

### 3.   Plaintiff has failed to state a claim under the Contract Clause.

The Plaintiff contends that the consumer protection provisions of the SLA which limit the amount of finance charges that can be collected on a payday loan (Ind. Code § 24-4.5-7-201), which prohibit the lender from requiring the consumer to pay for the lender's attorneys fees (Ind. Code § 24-4.5-7-409 and 7-410(d)), and which set ceilings on the amount that can be lent under the Small Loan Act (Ind. Code §§ 24-4.5-7-104 and 7-110) violate the Contracts Clause of the United States Constitution which provides that, "No state shall … pass any … Law impairing the Obligation of Contracts …". *U.S. Const., Art 1, §10, cl. 1.*  The Contracts Clause is contained in the same section of the Constitution that prohibits Bills of Attainder and Ex Post Facto laws.

A state law will only be found to violate the Contracts Clause if a change in state law operates as a substantial impairment of a contractual relationship.  *General Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992); *Khan v. Gallitano*, 180 F.3d 829, 832 (7th Cir. 1999).  The analysis of Contracts Clause claim has three prongs: 1) whether there is a contractual relationship, 2) whether a change in law impairs that contractual relationship, and 3) whether the impairment is substantial.  *General Motors Corp.*, 503 U.S. at 186.

In the instant case, the Court need look no further than the first prong of the analysis to determine that the SLA does not violate the Contracts Clause.  Plaintiff is not contending that contractual relationships which existed at the time of the creation of the SLA were impaired or interfered with. Rather, Plaintiff contends that the provisions of the SLA limit the ambit of freedom it possesses when it contracts with a prospective borrower.  A regulatory statute, duly

enacted by the legislature that imposes limits as to what a regulated entity, like Payday Today, can contract for does not invoke the restrictions of the Contracts Clause.  If this Court were to accept the reasoning of the Plaintiff, then no limitation could ever be imposed upon payday lenders, or, in fact, upon any lender, with regard to what interest rates could be charged or what fees could be collected.

    **4.  Violations of state law are insufficient to state Section 1983 claim.**

Plaintiff alleges that the DFI employees violated the Indiana by threatening enforcement proceedings against licensed payday lenders who violate the SLA.   Plaintiff is mistaken in its belief that these alleged violations of Indiana law provide a basis for Section 1983 claims.

In an en banc opinion, the Seventh Circuit soundly foreclosed Section 1983 claims for violations of state law, holding "A state ought to follow its law, but to treat a violation of state law as a violation of the Constitution is to make the federal government the enforcer of state law. State rather than federal courts are the appropriate institutions to enforce state rules." *Archie v. Racine*, 847 F.2d 1211, 1217 (7th Cir. 1987) (en banc), *cert. denied*, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989) (citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)).

Thus, Plaintiff may not rest its Section 1983 claims on violations of state law or on the constitutionality of the state law, and must instead point to a clearly established right that was violated by the conduct of these state officials.  There is no constitutional right for the Plaintiff, a licensed payday lender, to be free of the DFI's enforcement of the SLA.  Therefore, Plaintiff's Section 1983 claims based on the DFI's enforcement of the SLA must be dismissed.

    **C. The State agencies and state employees sued in their official capacities are not "persons" for purposes of Section 1983.**

Section 1983 of Title 42 provides a civil remedy against any person who, under color of state law, subjects a citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the federal Constitution or federal laws.  42 U.S.C. § 1983.  Section 1983 provides:

> Every *person* who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C.  1983 (emphasis added).

According to the United States Supreme Court, the term "person" in Section 1983 does not include states or state officials acting in their official capacities.  *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989).  Writing for the Court, Justice White indicated that the legislative intent to make states directly liable had not been shown with the clarity required to alter the "usual constitutional balance" between states and the national government. Nothing in the history or the purposes of Section 1983 clearly shows such an intent. *Id.* Accordingly, the Court held:

> that neither a State nor its officials acting in their official capacities are "persons" under § 1983.  For that reason the State cannot be sued under Section 1983, and Plaintiff's attempt to invoke Section 1983 to that end must be rejected.

491 U.S. at 71.

The Indiana Supreme Court reached the same result in *Bayh v. Sonnenburg,* 573 N.E.2d 398, 403 (Ind.1991), and in *Indiana Department of State Revenue v. Felix*, 571 N.E.2d 287, 295 (Ind. 1991) ("When sued for damages, states and state officials acting in their official capacities are not persons under 42 U.S.C.  1983.")  Similarly, the Indiana Court of Appeals has held that Section 1983 does not provide a remedy against states, state entities or state officials sued in

their official capacities because these parties are not considered "persons". *Lake County Juvenile Court v. Swanson*, 671 N.E.2d 429, 433 (Ind.Ct.App.1996).

Accordingly, the Plaintiff in this case is not entitled to relief from the Indiana Department of Financial Institutions or the Indiana Attorney General, Steve Carter, under 42 U.S.C. § 1983 as the State and its officials are not considered to be "persons" for the purposes of Section 1983.

### D.  The Eleventh Amendment to the United States Constitution prevents the Plaintiff from bringing this action in federal court.

This Court should dismiss this action against the DFI, its employees in their official capacities, and the Indiana Attorney General because the Eleventh Amendment precludes a lawsuit in federal court against a state agency and its officials challenging a State's statute.  It is clearly established that the State has not consented to suit in federal court.  The only means for Indiana to consent to suit in federal court is by act of the General Assembly.  *Ford Motor Co. v. Department of the Treasury of the State of Indiana,* 323 U.S. 459, 65 S. Ct. 347, 352 (1945). The General Assembly has passed no law consenting to suits regarding the Small Loan Act, Ind. Code § 24-4.5-7, against the State in federal court.  Furthermore, Indiana has by state statute specifically expressed its intent to claim its Eleventh Amendment immunity in federal court. Ind. Code §§ 34-4-16.5-5(d) and 34-4-16.7-3.  The federal court therefore has no power to adjudicate the claims against the State or its officials in this action.

An important aspect of state sovereign immunity is that it extends to state agencies and officials named in their official capacities.  The Seventh Circuit interpreted the Eleventh Amendment immunity to include not only the state, itself, but also state agencies or officials that are named as defendants.  *Moore v. State of Indiana*, 999 F.2d 1125, 1128 (7th Cir. 1993).  The DFI, being a state agency, is entitled to Eleventh Amendment immunity.  Charles Phillips, J. Philip Goddard, John Schroeder, and Mark Tarpey also are immune from suit in their official

capacities.  The DFI employees have acted strictly according to the IUCCC as authorized by the General Assembly.  Even though the Plaintiff has listed the DFI employees in their individual capacities, the allegations all stem from their enforcement of the SLA in their official capacities. There are no allegations that pertain to personal actions of the employees outside of their official capacities.

Still another central question upon which the Eleventh Amendment focuses is whether a plaintiff's compensation would come from a state treasury.  Citing the *Ford Motor Co.* decision, the Supreme Court in *Edelman v. Jordan* found that "the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."  415 U.S. 651, 663 (1974).  Plaintiff's claims for damages would impose a liability against Indiana's state treasury and, therefore, these claims are barred, even if the damages would be the measure "of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials."  *Id.* at 668.

Furthermore, the General Assembly has made it very clear that the DFI employees are immune from liability pursuant to Ind. Code § 24-4.5-6-104 and Ind. Code § 28-11-2-7.  The members, director, and employees of the DFI are not liable in an individual capacity except to the state for an act done or omitted in connection with the performance of their respective duties. Ind. Code § 28-11-2-7.  The DFI employees named in this lawsuit are officials at the DFI.  Any compensation granted to the Plaintiff, contrary to legislative intent, against these Defendants would come from the state's treasury.  Therefore, the Eleventh Amendment bars these claims and this case must be dismissed.

### E.   Defendants sued in their individual capacities are entitled to qualified immunity.

Charles Phillips, J. Philip Goddard, John Schroeder, and Mark Tarpey are sued in their individual as well as official capacities. As stated above, they are entitled to Eleventh Amendment immunity for the official capacity suits. Even if the Court finds that these officials are rightfully being sued in their individual capacities, they are entitled to qualified immunity. Qualified immunity allows an official performing discretionary functions immunity from damages under Section 1983, so long as the official's conduct conforms to what a reasonable official would have believed lawful in light of clearly established law and the information possessed at the time of the challenged conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Qualified immunity is a judicially-created doctrine that stems from the conclusion that few individuals will enter public service if such service entails the risk of personal liability for one's official decisions. *Cleveland-Perdue v. Brutsche*, 801 F.2d 427, 430 (7th Cir. 1989), *cert. denied* 498 U.S. 949 (1990). In *Anderson v. Creighton*, 483 U.S. 635 (1986), the Supreme Court determined that the "contours" of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right. As such, whether an official may be personally liable turns on the *objectively* legal reasonableness of the action in light of legal rules that were clearly established at the time. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982) (emphasis added).

The Seventh Circuit has summarized the *Harlow* inquiry as follows:

> In determining whether the right alleged to have been determined was "clearly established," the constitutional right must be identified in a particularized sense with respect to the circumstances of the alleged violation. In other words, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The plaintiff bears the burden of showing that the constitutional right allegedly violated was clearly established before the defendant acted or failed to act. This requires the plaintiff to offer either a closely analogous case or evidence that the defendants' conduct is so

patently violative of the constitutional right that reasonable officials would know without guidance from the courts.  To determine the applicability of qualified immunity, the defendants' actions must be compared to what a reasonable official would believe was required in light of the clearly established rules . . ..

*Casteel v. Pieschek*, 3 F.3d 1050, 1053 (7th Cir. 1993) (quotation marks and citations omitted) (as quoted in *Baxter by Baxter v. Vigo County School Corporation*, 26 F.3d 728, 737 (7th Cir. 1994)).

Indiana courts have accepted the doctrine of qualified immunity, and interpret the federal cases to require a plaintiff to address two factors in order to defeat a claim of qualified immunity: (1) what are the "clearly established rights" allegedly violated; (2) was the conduct "objectively reasonable."  *Slay v. Marion County Sheriff's Dept.*, 603 N.E.2d 877, 886 (Ind. Ct. App. 1992).

To the extent that the action is brought against Defendants in their personal capacities, it fails to state a claim because, from all appearances, the Defendants are being sued for actions taken in their roles as officials at the DFI, and they are therefore entitled to immunity from suit and liability under 42 U.S.C. § 1983.  Government officials performing discretionary functions are shielded from liability for civil damages by reason of the qualified immunity affirmative defense.  *Hunter v. Bryant,* 502 U.S. 224, 227 (1991).  "Public officials should not need to have the insight of constitutional law scholars, or the hindsight of Monday morning quarterbacks, to succeed in a qualified immunity defense."  *Levenstein v. Salafsky,* 164 F.3d 345, 351 (7th Cir. 1998).

Based upon the above-mentioned cases, the Plaintiff's Section 1983 claim should be dismissed because of the qualified immunity affirmative defense.

**1.  Plaintiff did not have any "clearly established rights" that the Defendants violated.**

To defeat the affirmative defense of qualified immunity, the Plaintiff must show that the Defendants violated its clearly established rights.  Plaintiff does not have a right to collect

attorney fees from consumers, collect treble damages from consumers, threaten consumers with criminal actions, or to contract with consumers for any of these terms in violation of the SLA.

Plaintiff appears to be asserting a constitutional right to collect attorney fees from consumers, collect treble damages from consumers, to threaten consumers with criminal actions, to extend loans in an amount greater than $500, and to contract with consumers for these terms in violation of the SLA.  No authority, however, supports the view that payday lenders have any rights regarding these issues.

In Counts XII, XIII, and XIV, the Plaintiff cites to the *Cottongim vs. Congoleton* case for support for a violation of the Contract Clause.  245 Ind. 387, 3 Ind. Dec. 475, 199 N.E.2d 96 (1964).  As explained above, this case does not support the Plaintiff's position that the SLA is unconstitutional because it violates the Contract Clauses of the Indiana and United States Constitutions.

**2.  The Defendants' conduct was objectively reasonable.**

To defeat the affirmative defense of qualified immunity, the Plaintiff must prove that the Defendant's conduct was not objectively reasonable.   In this case it is difficult to judge the allegations of misconduct of Charles Phillips because the Complaint fails to make any specific allegations against this Defendant.  A complaint which names a defendant in the caption but makes no allegations against that defendant in the body fails to state a claim against that party. *See Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974).  "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed . . ." *Shashoua v. Quern*, 612 F.2d 282, 284 (7th Cir. 1979), *citing Brzozowski v. Randall*, 281 F.Supp. 306, 312 (E.D.Pa. 1968).

As to all of the DFI employees, they have broad authority in enforcing the IUCCC as relegated by the General Assembly and as stated above.  Their exercise of this power through a filing of an enforcement proceeding against the Plaintiff is objectively reasonable given the fact that the Plaintiff is violating the SLA by collecting attorney fees from consumers, collecting treble damages from consumers, and threatening consumers with criminal actions in its collection cases.   (Complaint p. 10, Footnote 16.)

As further evidence of the Defendants' objective reasonableness, the Defendants notified the licensed payday lenders of their intent to enforce the SLA through a policy statement issued on February 22, 2005.  (Complaint p. 11).  The Defendants posted this policy on its website and sent a copy of the policy to each licensed payday lender.  (Complaint p. 11).  The Defendants took further steps to encourage compliance with the SLA through a notification letter advising the Plaintiff of possible future licensure revocation actions for continued noncompliance. (Complaint p. 11).

Accordingly, the Complaint fails to state a claim against Charles Phillips in his individual capacity because there is no specific allegation against him.  Furthermore, the Plaintiff has not shown that any of the Defendants failed to act objectively reasonable in the enforcement of the SLA.  The Plaintiff cannot defeat the affirmative defense of qualified immunity, so this case should be dismissed.

### F.   The public interest weighs in favor of the constitutionality of the SLA.

A motion to dismiss under Rule 12(B)(6) tests the legal sufficiency of a claim, not the facts supporting it.  *Phelps v. Sybinsky*, 736 N.E.2d 809, 813 (Ind. Ct. App. 2000), *trans. denied*. The trial court must view the complaint in the light most favorable to the non-moving party, drawing every reasonable inference in that party's favor.  *Town of Plainfield v. Town of Avon*,

757 N.E.2d 705, 710 (Ind. Ct. App. 2001), *trans. denied*.  The trial court must dismiss "if it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances."  *Id.*  Further, "when the validity of a statute is challenged, [the court] must begin with a 'presumption of constitutionality.'"  *State v. Lombardo,* 738 N.E.2d 653, 655 (Ind. 2000) (quoting *State v. Downey,* 476 N.E.2d 121, 122 (Ind. 1985)). "The burden to rebut this presumption is upon the challenger, and all reasonable doubts must be resolved in favor of the statute's constitutionality."  *Id.*

As for the balance of harms and the public interest, where the constitutionality of a statute is at stake, the public interest is always presumed to favor the statute. *See Sims v. United States Fidelity & Guaranty Co.*, 782 N.E.2d 345, 349 (Ind. 2003); *Wells v. Auberry*, 429 N.E.2d 679, 684 (Ind. Ct. App. 1982).

The nature of usury is that unscrupulous lenders are forever seeking ways to evade interest limits through devices that will increase the lender's profits and prey on desperate consumers.  The resilience and determination of the usurious lender has been documented for some time.  Testifying to the age of this practice, a federal court, exposing a post-dated check cashing scheme, cites an old Kentucky case,

> The cupidity of lenders, and the willingness of borrowers to concede whatever may be demanded or to promise whatever may be exacted in order to obtain temporary relief from financial embarrassment, as would naturally be expected, have resulted in a great variety of devices to evade the usury laws; and to frustrate such evasions the courts have been compelled to look beyond the form of a transaction to its substance, and they have laid it down as an inflexible rule that the mere form is immaterial, but that it is the substance which must be considered.

*Hamilton v. York*, 987 F.Supp. 953, 955 (E.D. Ky. 1997) (quoting *Hurt v. Crystal Ice & Cold Storage Co.*, 215 Ky. 739, 286 S.W. 1055,1056-57 (1926)).  The public interest in protecting the consumers of the state of Indiana from unscrupulous creditor practices through legislation is exactly what the court in *Livingston* intended to take place in Indiana.

A challenge to the constitutionality of the SLA must fail because the public interest weighs in favor of regulating the small loan industry to give consumers the necessary safeguards to protect them from unscrupulous creditors, and the Plaintiff has not met its burden in establishing that the SLA is unconstitutional.

### *Conclusion*

Based upon all of the foregoing, Defendants respectfully request that the Court grant the instant Motion to Dismiss.

Respectfully submitted,
STEVE CARTER
Attorney General of Indiana

By:     */s/ Melinda C. Frick*
        _____
        Melinda C. Frick
        Deputy Attorney General
        Atty. No. 11755-32A
        *Counsel for Defendants*

And By: */s/ Chad C. Duran*
        _____
        Chad C. Duran
        Deputy Attorney General
        Atty. No. 18615-53
        *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was served upon the person(s) listed below, by U.S. mail, first class postage prepaid, on May 19th, 2005:

Edward Hall
7520 Broadway
Merrillville, Indiana 46410

*/s/ Chad C. Duran*
_____
Chad C. Duran
Deputy Attorney General

Office of the Indiana Attorney General
Fifth Floor, IGC-South
302 W. Washington St.
Indianapolis IN  46204
(317) 232-6292
Doc #: 227016